***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant on the date of the injury giving rise to this claim.
3. Defendant is a duly qualified self-insured.
4. Plaintiff's average weekly wage calculation, if necessary, will be determined pursuant to a Form 22 wage chart that has been provided by defendant as part of stipulated exhibit two.
5. Plaintiff contends that he sustained a compensable injury by accident to his back on or about 25 March 1999, and that as a result he is entitled to medical compensation, temporary total disability compensation for the period 1 May 1999 through 9 August 1999, and payment for his permanent disability rating.
6. Plaintiff has been assigned an eight percent permanent partial impairment rating to his back as a result of the alleged injury by accident.
7. Defendant reserves the right to have plaintiff undergo a medical evaluation pursuant to N.C. Gen. Stat. § 97-27(b) regarding his permanent disability rating.
8. Prior to the hearing before the Deputy Commissioner, the parties took the deposition testimony of plaintiff and lay witness Thomas R. Bauroth. Subsequent to the hearing before the Deputy Commissioner, the parties deposed lay witness Michael Robert Wood and expert witnesses Dr. Malcomb Shupeck and chiropractor Tina M. Driscoll. These depositions are a part of the evidentiary record in this matter. In addition to the depositions and exhibits attached thereto, the parties stipulated into evidence in this matter stipulated exhibit one, a packet of plaintiff's medical records; and stipulated exhibit two, a packet of Industrial Commission forms and discovery responses.
9. The issues to be determined are whether plaintiff sustained a compensable injury by accident to his back on or about 25 March 1999, and if so, to what medical and indemnity benefits is he entitled.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 48 years old. Plaintiff has a G.E.D. and three years of college education. On 10 November 1998 plaintiff began working for defendant as an account manager. Plaintiff's job as an account manager consisted of calling on customers or potential customers, either in person or via telephone, to fill the trailers of defendant's trucks with shipments, with the goal of filling each truck as nearly full as possible with several customers' goods.
2. As part of his employment with defendant as an account manager, plaintiff was required to attend a sales training seminar in Little Rock, Arkansas in March 1999. Because plaintiff has a fear of flying, he received authorization to drive his company car from his home near Fayetteville to Little Rock, Arkansas, the site of the training seminar. The seminar was scheduled to begin on Monday, 22 March 1999, so plaintiff left his home that weekend and drove straight through to Arkansas, arriving on Saturday, 20 March 1999.
3. When plaintiff awoke one morning early in the week, he noticed that his neck was stiff and he had a headache. He attributed this to the long drive the previous weekend and to the cold temperature in his hotel room. The next day plaintiff noticed that in addition to his neck being stiff, his right arm felt numb. Plaintiff told a few people at the seminar and his wife whom he called every evening that his neck was stiff and that he had a headache.
4. Plaintiff attended the remainder of the seminar, which concluded after half a day on Thursday, 25 March 1999. Plaintiff had loaned his company car the previous evening to some other seminar attendees, and when he went to load his car on the morning of 25 March 1999, he first was unable to find the car. When he did so, he discovered that it was parked on a slight incline and was out of gas, so it would not crank or start.
5. Plaintiff then tried to push the car off of the incline in an attempt to level it so that what fuel was in the tank would be accessible and the car would crank. He attempted this several times and several different ways but was unsuccessful each time. Plaintiff alleges, in his deposition and hearing testimony, that on one attempt he slipped and fell and landed on his back when trying to push the car. However, this testimony is not credible as plaintiff did not mention this incident until his deposition in August 2000. In fact, plaintiff did not tell his wife, his coworkers, his physicians, or report in any Industrial Commission form that he had fallen while attempting to push the car.
6. Because plaintiff's attempts at moving the car were unsuccessful, he went back into the hotel and asked several people to help him. Significantly, plaintiff did not inform any of these people that he had just fallen; nor did he tell them that the effort of pushing the car had hurt his neck or back. Instead, he merely informed them that he needed their assistance in moving the car. Plaintiff helped the men push the car, during which time no one noticed that plaintiff was grimacing or exhibiting any unusual pain behavior, and they eventually were able to move the car onto level ground. As a result, plaintiff was able to crank the car and coast down the hill to the nearby gas station.
7. Plaintiff then made the long drive home back to North Carolina. His trip exacerbated his stiff neck, headache, and numbness in his arm.
8. Plaintiff returned to work on Monday, 29 March 1999, at which time he reported to the terminal manager that he had a stiff neck and a bad headache. Plaintiff worked the next day, 30 March 1999, as well, but at that point felt he was unable to continue working, so at the suggestion of the terminal manager, he sought treatment with a chiropractor who was on defendant's health plan. At no time during the course of these conversations with the terminal manager or his supervisor, Gary Davis, did plaintiff report that he had injured his neck or back while pushing the car, either by falling or because of the exertion involved.
9. Plaintiff presented to chiropractor Driscoll on 30 March 1999, where he complained of neck pain and right arm numbness. Plaintiff did not report to Driscoll that he had injured himself while pushing a car or falling, but instead told her that he attributed the pain and numbness to the lengthy car trips he had made. Driscoll treated plaintiff for a short period of time and ordered an MRI that revealed abnormalities at C5-6. Driscoll treated plaintiff through 19 April 1999, at which time she indicated that plaintiff would more appropriately be treated by a medical doctor. Plaintiff, therefore, was referred to Dr. Shupeck, a neurosurgeon.
10. Plaintiff first presented to Dr. Shupeck on 6 May 1999 complaining of neck and right arm pain, as well as hip and leg pain. Dr. Shupeck ordered a myelogram which confirmed an abnormality in plaintiff's cervical spine at C5-6 and which revealed abnormalities in plaintiff's lumbar spine. Dr. Shupeck recommended an intra-cervical decompression and fusion at C5-6 which plaintiff underwent on 28 May 1999.
11. Plaintiff was taken out of work by chiropractor Driscoll on 30 March 1999 at which time he stopped working but plaintiff nevertheless continued to receive his salary through the entire month of April 1999.
12. Plaintiff was out of work after his surgery through 10 August 1999, on which date Dr. Shupeck released him to return to work. Dr. Shupeck found plaintiff to be at maximum medical improvement as a result of his neck condition and assigned an eight percent permanent partial impairment rating to plaintiff's cervical spine. Dr. Shupeck has not treated plaintiff for his lower back problems.
13. Plaintiff returned to work for defendant on 10 August 1999 where plaintiff continued to work as an account manager through 13 March 2000. On 20 March 2000 plaintiff went to work as an account manager for Packer Expressways. In June 2000 plaintiff became employed as an account executive for Wilson, earning $800.00 per week. Plaintiff remained employed in this capacity through the date of the hearing before the Deputy Commissioner.
14. Dr. Shupeck's notes do not reveal that plaintiff provided a history to him of the incident of pushing the car, nor does Dr. Shupeck recall plaintiff reporting that he had fallen when pushing the car. In addition, Dr. Shupeck cannot state to a reasonable degree of medical probability that the lengthy car drives caused plaintiff's cervical disc herniation.
15. Plaintiff's account that he injured his back and neck by falling when he attempted to push the car is not accepted as credible due both the lack of corroborating evidence and the contrary evidence of record. In addition, plaintiff's account that he injured his back and neck through the exertion of pushing the car also is not credible because this is not supported by the greater weight of the evidence and is not corroborated by other evidence or testimony. In fact, Dr. Shupeck himself was unable to state to a reasonable degree of medical probability that the exertion involved in pushing the car was the cause of plaintiff's cervical disc herniation.
16. While the lengthy car trips may have exacerbated plaintiff's neck pain, the greater weight of the evidence of record does not support a conclusion that the drives resulted in an injury by accident or a specific traumatic incident within the meaning of the Workers' Compensation Act or the applicable case law.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
Plaintiff has not shown by the greater weight of the evidence that he sustained a compensable injury by accident or specific traumatic incident on or about 25 March 1999 by either taking lengthy car trips, by pushing a car, or by falling when attempting to push the car, or that any of those events caused the injuries for which plaintiff later sought medical treatment. Therefore, plaintiff is entitled to no benefits under the Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim for workers' compensation benefits must be, and the same is HEREBY DENIED.
2. Defendant shall pay an expert witness fee of $75.00, if not already paid, to Tina M. Driscoll, D.C., for her deposition testimony in this matter.
3. Each party shall bear its own costs of this proceeding.
This the ___ day of December 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER